# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **DECAMEO M. REYNOLDS** | * | **CIVIL ACTION NO.  12-2448** |
| **VERSUS** | * | **JUDGE JAMES T. TRIMBLE, JR.** |
| **WARDEN, LOUISIANA STATE PENITENTIARY** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

*Pro Se* Petitioner Decameo M. Reynolds filed a deficient petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on September 7, 2012 [doc. # 1] and thereafter filed a corrected petition on October 3, 2012.  [doc. # 4].  Respondent responded to the petition on May 9, 2013.  [doc. # 19].  Petitioner, an inmate in the custody of Louisiana's Department of Public Safety and Corrections incarcerated at the Louisiana State Penitentiary, Angola, Louisiana, attacks his conviction and sentence for two counts of second degree murder.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

## BACKGROUND

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal:

> In the early morning hours of June 7, 2007, the defendant went to a mobile home in Lincoln Parish to buy "some cigars and some weed." The  occupants of the dwelling, Willie Perry and Sharon Ann Newman, told the defendant to leave. The defendant and Perry got into a scuffle and Newman came outside with a pistol. The defendant went to a nearby car. Perry and Newman went back into the residence and went to bed. The defendant armed himself with a .32 caliber gun, entered the residence, and

shot both Perry and Newman in the head while they were in bed. The victims died of their wounds.

The defendant was developed as a suspect in the killings. The next day, law enforcement officers located the defendant at his father's house in Jackson Parish. The defendant was told that the officers wanted to question him about the murders. The defendant went willingly with the law enforcement officers who transported him back to Lincoln Parish.

At the courthouse, the defendant's handcuffs were removed and he was placed in a room that was used for interviews and for file storage. The defendant was given his Miranda warnings several times. He eventually waived his rights and gave a statement admitting the murders. He was charged by grand jury indictment with two counts of first degree murder. The defendant filed a motion to suppress his statements, claiming they were not voluntarily given and were obtained through continued interrogation after the defendant asserted his right to remain silent and his right to counsel.

*State v. Reynolds*, 55 So.3d 136,138-39 (La.App. 2 Cir. 2010).

After the state trial court denied Petitioner's motion to suppress, he entered a plea of guilty to two counts of second degree murder on January 12, 2010. (R. 239-40). Petitioner was sentenced to life imprisonment on each count of second degree murder without the benefit of parole, probation, or suspension of sentence. (R. 242). Petitioner appealed the trial court's denial of his motion to suppress statements made to law enforcement officers to the Louisiana Second Circuit Court of Appeal. (R. 1318-32). On appeal, the state appellate court affirmed the trial court's decision finding that "[t]he record shows that the confession made by the defendant was free and voluntary." *See* (R. 380-91); *see also Reynolds*, 55 So. 3d at 142. Petitioner failed to appeal the appellate court's decision to the Louisiana Supreme Court.

On July 5, 2011, Petitioner filed an application for Post Conviction Relief ("PCR") raising two claims for relief: (1) the trial court erred in denying his motion to suppress; and, (2) ineffective assistance of counsel. (R. 409-30). On August 8, 2011, the state trial court denied Petitioner's PCR. (660-61). Specifically, the court found that "[c]laim one was fully litigated on

2

appeal and pursuant to La.C.Cr.P. art. 930.4(A)," denied the claim as procedurally barred, and

that claim two, "if established, would not entitle [Petitioner] to relief." *Id.* Petitioner's

application for writs was denied by the Second Circuit on November 17, 2011. (R. 674-75). His

writ application to the Louisiana Supreme Court was denied on July 7, 2012. (R. 677); *see also*

*State ex rel. Reynolds v. State*, 93 So. 3d 598 (La. 2012).

Petitioner filed the instant petition on September 7, 2012, raising the two claims

originally presented in his PCR application, one of which was also raised on direct appeal. *See*

[doc. # 1-2].  Specifically, Petitioner argues the following in his *habeas* petition: (1) the trial

court erred in denying Petitioner's motion to suppress statements he made to law enforcement

officers; and, (2) ineffective assistance of counsel. [doc. # 1-2, P. 6, 16].

The matter is now before the undersigned.

## LAW AND ANALYSIS

### I.   Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254,

governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider *habeas* claims.

After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is

limited to the record that was before the state court[.]"  *Cullen v. Pinholster*, ––– U.S. –––, 131 S.

Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt*, 230 F.3d at 740.  Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).

## II.     Petitioner's Claims

### 1.     Claim One: Motion to Suppress Confession[1]

Petitioner argues that the trial court erred by denying his motion to suppress the confession.  Specifically, he alleges that the statements he made to law enforcement officers were elicited after he invoked his right to remain silent and his right to counsel.  [doc. # 1-2, P. 6].

---

[1] Although the state trial court denied this claim as procedurally barred pursuant to La.C.Cr.P. art. 930.4(A), this finding does not bar this *habeas* Court from reviewing the claim on its merits.  Article 930.4(A) precludes a Louisiana state court from considering the merits of a claim on collateral review that has already been raised on direct appeal; however, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994) (finding that Article 930.4(A) "did not bar the district court from addressing the merits of [a petitioner's] insufficient evidence and jury charge claims").

As Respondent properly points out, a suppression hearing was held before the state trial court on September 11, 2009.  (R. 250-337).  Extensive testimony was elicited during the suppression hearing, which the Louisiana Second Circuit Court of Appeal summarized as follows:

> At the hearing on the motion to suppress, the officers who were present during the questioning of the defendant testified. George Webb, an investigator with the Lincoln Parish Sheriff's Office, stated that the interview of the defendant began at 4:10 p.m. on June 8, 2007. The defendant was advised of his Miranda rights.  The defendant was 22 years old and had completed three semesters of college. The defendant signed the rights form and agreed to answer questions without a lawyer being present.
>
> According to Webb, Kenneth Wesley of the Lincoln Parish Sheriff's Office did the majority of the questioning of the defendant. Webb testified that the defendant was not forced, threatened, coerced or intimidated. No promises were made to the defendant. The initial part of the interview was not recorded. The defendant made no inculpatory statements at that time. For some reason, the defendant was uncomfortable with Webb being in the room. As Webb left the room, he turned on his voice recorder and placed it  on top of a file cabinet in the room. Webb then stood outside the room.
>
> A transcript of the conversation between Wesley and the defendant shows that the defendant initially denied involvement in the murders. Wesley asked the defendant whether he would rather face the electric chair or spend life in prison. The defendant said he would rather go to the electric chair. Wesley mentioned suspicions that the defendant was involved in another offense involving the rape and murder of a child. Wesley told the defendant that he would not make it out of Angola. The defendant stated, "I am through talking." The interview was terminated.
>
> Wesley told Webb that he and Stephen Williams, also of the Lincoln Parish Sheriff's Office, could go back into the room and talk to the defendant. The defendant stated to Webb and Williams that he had been informed of his Miranda rights, that he understood them, and "I'm gonna take em." The interview was concluded.
>
> While talking with the officers, the defendant asked to see his mother. Williams stayed in the unsecured file room with the defendant while Webb and Wesley went to get the defendant's mother. While they were in the room together, the defendant initiated  a conversation with Williams and asked him what he thought. Williams, who knew that the defendant had told his father that he committed the murders, told the defendant that he had put his father in a bad position because the defendant's father might have to testify against him. The defendant asked for Wesley and said

5

that he wanted to tell Wesley what happened.

Webb and Wesley were about two blocks from the courthouse when they were contacted and returned to the courthouse. Webb and Wesley went back into the room with the defendant. The defendant was again administered his Miranda rights and signed a form stating that he understood his rights and waived them. The defendant gave a statement confessing to the murders.

At the hearing on the motion to suppress, Wesley acknowledged that he had prayer with the defendant before the interviews. Wesley testified that he did not think his statements to the defendant regarding the electric chair, not making it out of Angola, and possibly being involved in another offense involving a child were threatening or intimidating.

*Reynolds*, 55 So. 3d at 140-41.

The state trial court issued a reasoned opinion denying Petitioner's claim, finding:

In the case at hand, the evidence is uncontradicted  that after the defendant invoked his rights, the first interview ceased and the recorder was turned off. Webb and Wesley, at Reynold's [*sic*] request, went to get his mother to bring her to Reynolds. At that point, Reynolds initiated a conversation with Williams and then he decided that he wanted to give a statement and he so told Williams. Webb and Wesley were notified and returned to the interview room where Reynolds was again Mirandized and at that time gave a free and voluntary confession detailing his involvement in this particular crime. Accordingly, for the reasons hereinabove stated, the motion to suppress will be DENIED.

(R. 235-36).  As stated *supra*, the state appellate court affirmed the trial court's decision, holding that Petitioner was "informed of his rights under *Miranda* and chose to waive those rights and confess to the murders. There is no showing that any statements made to the defendant during questioning were threatening, coercive, or intimidating . . . This record shows that the confession made by the defendant was free and voluntary."  *Reynolds*, 55 So. 3d at 142.

The Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during custodial interrogation without a *Miranda* warning.  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  "A suspect is in custody for purposes of *Miranda* when he is placed under formal arrest or when a reasonable person in the position of the suspect would

6

understand the situation to constitute a restraint on freedom of movement to the degree that the law associates with formal arrest." *United States v. Gonzalez*, 121 F.3d 928, 939 n.6 (5th Cir. 1997).  Interrogation, for purposes of *Miranda*, includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Petitioner was in clearly in custody and was interrogated by the deputies upon his arrival at the Lincoln Parish Sheriff's Office.  However, the record shows that Petitioner knowingly, voluntarily, and intelligently waived his *Miranda* rights.  The waiver inquiry "has two distinct dimensions:" waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 427 (1986).  The prosecution need not show that a waiver of Miranda rights was express.  An "implicit waiver" of the "right to remain silent" is sufficient to admit a suspect's statement into evidence.  *North Carolina v. Butler*, 441 U.S. 369, 376 (1979).  *Butler* made clear that a waiver of *Miranda* rights may be implied through "the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver." 441 U.S., at 373.

If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate "a valid waiver" of Miranda rights.  *Miranda*, 384 U.S. at 475.  The prosecution must make the additional showing that the accused understood these rights.  *Colorado v. Spring*, 479 U.S. 564, 573-575 (1987).  Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of

7

the right to remain silent.  *Berghuis v. Thompkins*, ___U.S. ___, 130 S. Ct. 2250, 2262 (2010).

Finally, the law can presume that an individual who, with a full understanding of his or her

rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish

the protection those rights afford.  *Id.* at 2262.

The record indicates that the deputies reminded Petitioner of his *Miranda* rights upon his

arrival at Lincoln Parish Sheriff's Office.  In response, Petitioner voluntarily waived his rights

and agreed to speak with the deputies.  Subsequently, Petitioner invoked his *Miranda* right;

however, he then reinitiated contact with the deputies by asking for their opinions.  Moreover,

Petitioner specifically asked for Deputy Wesley because he wanted to tell him what happened.

He was again read his *Miranda* rights and chose to waive those rights and confess to the two

murders.  As the state court found and the record reveals, there is no showing that any statements

made to Petitioner were unduly threatening, coercive, or intimating.  There is no basis in the

record to conclude that Petitioner did not understand his rights when he indicated that he did, or

that the police in any way forced him to speak.  Accordingly, the undersigned cannot find that the

state trial court's determinations were unreasonable, and thus, Petitioner's claim for relief based

on a violation of his Fifth Amendment right lacks merit and should be **DENIED**.

2.      Claim Two: Ineffective Assistance of Counsel

In Petitioner's final claim he argues that both his trial and appellate counsel were

ineffective for failing to file a motion to suppress on the "grounds of an illegal arrest, and argue

the statement should be suppressed as fruits thereof."  [doc. # 1-2, P. 16].  Specifically, Petitioner

asserts that state lacked the request probable cause for his arrest, as "Captain Wesley revealed

that the reason for the defendant . . . being picked up was based on information received by the

informant . . .  Instead Detectives relied on the Parole Warrant, which was never served, to make

the arrest on the murder charge."

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thronton*, 646 F.3d 199 (5th Cir. 2011); *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a petitioner must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).  Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy.  *See Strickland*, 466 U.S. at 689-90.  The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair."  *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984).  Unreliability and unfairness do not result "if the ineffectiveness of

counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995).  Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time.  *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

On collateral review, the state trial court denied Petitioner's ineffective assistance of counsel claim, finding that "Petitioner has not shown either part of the two-prong [*Strickland*] test."  (R. 661).

In light of the incomplete and conclusory nature of Petitioner's arguments, the undersigned cannot find that the state trial court's determinations were unreasonable .  The Supreme Court has refined the prejudice inquiry in the context of ineffective-assistance claims based on counsel's failure to adequately file a motion to suppress:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).  Here, Petitioner is unable to establish that a motion to suppress his confession based on his "illegal arrest" would have been meritorious.  The uncontroverted testimony of Deputy George Webb establishes that  Petitioner was never under formal arrest prior to the interrogation and, in fact, voluntarily went to the Lincoln Parish Sheriff's Office for questioning.  Furthermore, had he refused to go to voluntarily, the Sheriff's Office actually had an outstanding warrant which could have been used to bring him in for questioning.  Deputy Webb's testimony was as follows:

Q.      Was he under arrest at the time that he was brought – that he appeared in your

10

file room/interview review?

A.    No, he was not.

Q.    Okay. How did he get there?

A.    We brought him there. We located him at his father's house. It was actually in another jurisdiction, Jackson Parish. We asked him if he would be willing to come to Lincoln Parish Sheriff's Office to discuss the case. He indicated he was more than willing.

Q.    Okay. Did you place him under arrest?

A.    No, we did not.

Q.    Did you tell him what it was about?

A.    No, I did not.

Q.    Did he voluntarily come?

A.    Yes, he did.

Q.    You testified that you were holding a warrant for him. Is that correct?

A.    That's correct.

Q.    Do you agree that as far as you were concerned, he wasn't free to leave?

A.    I do.

Q.    Did he know you had a warrant?

A.    No, he did not.

              *                              *                              *

Q.    When was he placed under arrest?

A.    After he gave a statement stating that he killed Ms. Newton and Mr. Perry.

(R. 290-91).  Thus, although Deputy Webb had a warrant for Petitioner's arrest, he never had to execute it as Petitioner "was more than willing" to accompany the deputies to their office.

11

Therefore, Petitioner's argument would have failed because the underlying facts asserted in his argument are factually untrue.  Accordingly, the state courts' rejection of Petitioner's claim was neither the product of an unreasonable application of clearly established Federal law nor the result of an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Petitioner's claim for relief on the basis of ineffective assistance of counsel should be **DENIED.**[2]

## CONCLUSION AND RECOMMENDATION

For the reasons stated above,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by Petitioner Decameo M. Reynolds [docs. # 1, 4] be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE**

---

[2] The undersigned notes that Petitioner has two unnumbered claims at the end of his *habeas* petition: (1) "Petitioner has erroneously been denied discovery and an evidentiary hearing;"and, (2) "Petitioner was denied a full and fair fact finding hearing."  [doc. # 1-2, P. 31]. A *habeas* petitioner has the burden of proving facts in support of his claim and unsupported conclusory allegations do not warrant *habeas* relief.  *Uresti v. Lynaugh*, 821 F.2d 1099, 1103 (5th Cir. 1987); *Wilson v. Butler*, 813 F.2d 664, 671 (5th Cir. 1987); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983); *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980). Petitioner merely raises these two arguments in conclusory fashion and has provided no legal or factual support for his claims, and therefore, they should be **DENIED**, as frivolous.

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 25th day of June, 2013.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE